UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES RAHEEM RAINS,

        Plaintiff,                Case No. 1:17-cv-470

v.                                    Honorable Robert J. Jonker

WILLIE SMITH et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Smith, Andrews, Brahman, Sperry, Lewis, and Gerlach. The Court will serve the complaint against Defendants LeBarre, Huyge, Sikkema, Moody, and Dolittle.

**Discussion**

I.        Factual allegations

Plaintiff James Raheem Rains presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). He sues the following ICF Defendants: Warden Willie Smith; Correctional Officers (unknown) Andrews, (unknown) Brahman, and (unknown) Sperry; Grievance Coordinator (unknown) Lewis; Health Care Manager (unknown) LeBarre; Doctor (unknown) Gerlach; Physician Assistant David Huyge; and Nurses (unknown) Sikkema, (unknown) Moody, and (unknown) Dolittle.

On November 20, 2016, at about 8:20 a.m., Defendants Brahman and Andrews escorted Plaintiff back to his cell after his shower. Defendant Sperry, who apparently could not see the cell from his station, closed the door too soon, trapping Plaintiff with the closing door. As the door continued to press tighter, Plaintiff had difficulty breathing. Defendant Brahman pushed on the door to keep it from closing. Defendant Andrews waived her arms and yelled for Sperry to open the door. Sperry opened the door, but Plaintiff alleges that he was in pain and requested medical attention. "Andrews replied, '[I]t's not his fault he can[']t see,' referring to C/O Sperry." (Compl., ECF No. 1, PageID.9.)

At 9:15 a.m., as Defendant Sikkema was passing his cell, Plaintiff tried to explain what had happened and asked for medical assistance. Defendant Sikkema ignored Plaintiff and walked by. Plaintiff submitted a medical kite the next day, complaining that the incident had injured his neck and back and that he was in pain. He received no response. For the next week, he daily attempted to stop medical personnel, including Defendants Dolittle, Sikkema and Moody. All

Defendants ignored him. He filed a second medical kite on November 27, 2016, and he filed a grievance on that same date.

Plaintiff was moved to a different cell on November 29, 2016, and he wrote another kite to health services that same day. On December 12, Plaintiff wrote a kite to Defendant Grievance Coordinator Lewis, again telling his story. He asked why he had not received a grievance response. When he heard nothing for a day, he wrote a second grievance on December 13, 2016, describing the incident and complaining that he had not received any medical attention. On December 20, having sent multiple kites and grievances and having received no response, Plaintiff wrote kites to Defendant Warden Smith and Health Care Manager LeBarre. Plaintiff still has not received medical care. He also has not received the "K.O.P." medication he uses to treat his migraines. (*Id.*)

Plaintiff contends that Defendants Andrews, Brahman, and Sperry are responsible for injuring him and for failing to get him immediate medical care on the first day. He asserts that Defendant Warden Smith is responsible both as the person in charge of prison operations and because he received a kite from Plaintiff. He argues that Defendant Doctor Gerlach is responsible for the health of all inmates, and he was or should have been informed of Plaintiff's need by way of his written kites requesting medical care. In addition, Plaintiff claims that Defendant Huyge is the Physician Assistant responsible for reviewing medical kites and signing the release for the KOP medication. Defendant Huyge also makes rounds in segregation, and Plaintiff informed him on numerous times of his problem. Finally, Plaintiff contends that Defendant Nurses Doolittle, Moody, and Sikkema passed out medicines every day and heard his complaints on multiple occasions. They also picked up his medical kites. Yet they never assessed him or provided him medical care.

For relief, Plaintiff seeks compensatory and punitive damages, together with injunctive relief in the form of proper medical treatment and an MRI scan by an outside provider. He also seeks a temporary restraining order barring Defendants from retaliating against him, as he claims happens to other prisoners when they file lawsuits.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Defendants Smith, Gerlach, and Lewis

Plaintiff alleges that Defendant Smith is liable for his injuries because he failed to supervise his employees and failed to take action in response to Petitioner's kite. Similarly, Plaintiff broadly contends that Defendant Gerlach is responsible for the health of all inmates and that he should have known of Plaintiff's problems because of the kites Plaintiff wrote to health services, though he specifically alleges that Defendant Huyge, not Defendant Gerlach, reviewed prisoner kites to determine whether to see the prisoner. Plaintiff's only allegation against Defendant Lewis is that, as grievance coordinator, Lewis failed to respond to or process his grievances and failed to respond to his kites.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or prisoner complaint. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Smith, Gerlach, and Lewis engaged in any active unconstitutional behavior. Instead, his allegations concern mere claims of supervisory liability or failure to respond to a prisoner's grievances.

Further, to the extent that Plaintiff suggests that he had a due process right to have his grievances processed by Defendant Lewis, he fails to state a claim. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Lewis' conduct did not deprive Plaintiff of due process.

For all these reasons, Plaintiff fails to state a claim against Defendants Smith, Gerlach, and Lewis.

### B. Defendants Andrews, Brahman, and Sperry

Plaintiff alleges that Defendants Andrews, Brahman, and Sperry violated his Eighth Amendment rights by closing him in the door. He further alleges that Defendants Andrews and Brahman violated his Eighth Amendment rights when they failed to immediately call for a medical provider.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir.

2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Farmer*, 511 at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

In the instant case, Plaintiff's allegations concerning the actual incident of being closed in the door utterly fail to demonstrate more than negligence. Indeed, Plaintiff acknowledges that Defendant Brahman vigorously attempted to prevent the door from closing harder on Plaintiff, and Defendant Andrews immediately waved her arms and yelled for Sperry to reopen the door. He also acknowledges that Andrews told him that Sperry could not actually see the door when he was

closing it, and Plaintiff makes no allegation to the contrary. Moreover, Plaintiff at no times suggests that Sperry acted intentionally or had a malicious motive for closing the door on him. The events Plaintiff describes suggest that the incident was a simple accident or, at best, a case of negligence. He completely fails to allege facts suggesting that Andrews, Brahman, or Sperry acted with a conscious disregard of a substantial risk of harm to Plaintiff's health or safety. *Id.* He therefore fails to state a claim against them based on the incident in which he was closed in the door.

With respect to the allegation that Defendants Brahman and Andrews failed to immediately call for medical attention for Plaintiff, Plaintiff also fails to state a claim. As earlier discussed, to violate the Eighth Amendment, a plaintiff must show that the defendant acted with deliberate indifference. *Farmer*, 511 U.S. at 834. To satisfy the objective component in a medical claim, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff alleges only that he told Brahman and Andrews immediately after the incident that he was in pain and wanted medical care. Plaintiff does not allege that he suffered any obvious injury, and he did not even send a medical kite until the next day. His claimed injuries to

neck and back and his resulting migraines were not mentioned to Braham and Andrews and likely were not apparent even to Plaintiff until sometime after the incident. Plaintiff therefore fails to allege facts suggesting that, immediately after the incident, his need for medical care was obvious, even to a lay person. *Blackmore*, 390 F.3d at 899. Stated differently, the facts alleged fail to support a conclusion that Brahman and Andrews both knew of a substantial risk of serious harm and disregarded the risk. *Farmer*, 511 U.S. at 837.

For these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants Andrews, Brahman, and Sperry.

### C. Remaining Defendants

Upon review, the Court concludes that Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendants LeBarre, Huyge, Sikkema, Moody, and Doolittle. The Court therefore will order service of the complaint on these Defendants.

### D. Temporary Restraining Order

Plaintiff seeks a temporary restraining order prohibiting Defendant from retaliating against him for filing his civil rights complaint. His basis for requesting preliminary relief is his perception that other prisoners suing unknown defendants have experienced retaliation after filing lawsuits.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not

issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claim or Equal Protection claim. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights. Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Plaintiff alleges no facts suggesting that the

remaining Defendants have engaged in retaliation against him or any other person. Instead, Plaintiff sweepingly claims that he is aware of other prisoner-plaintiffs who have experience retaliation by unspecified individuals after filing lawsuits. Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Smith, Andrews, Brahman, Sperry, Lewis, and Gerlach will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants LeBarre, Huyge, Sikkema, Moody, and Dolittle. Plaintiff's request for a temporary restraining order (Compl., ECF No. 1, PageID.10) will be denied.

An Order consistent with this Opinion will be entered.

Dated:      July 17, 2017              /s/ Robert J. Jonker
                                                    ROBERT J. JONKER
                                                    CHIEF UNITED STATES DISTRICT JUDGE